UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALL AMERICAN TRANSPORT | CIVIL ACTION |
| VERSUS | NO: 15-3971 |
| SABINE SURVEYORS | SECTION: "H"(1) |

ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Doc. 41). For the following reasons, the Motion is GRANTED.

BACKGROUND

Plaintiff alleges that it purchased a barge, the *Gonsoulin 111*, from Defendant LeBeouf Brothers Towing ("LeBeouf"). Prior to purchasing the barge, it enlisted Defendant Sabine Surveyors ("Sabine") to conduct a survey of the barge. The survey was performed while the barge was docked at Defendant Bayou Blue's dock. Sabine issued a report certifying that the vessel was in good overall condition but did not enter the cargo tanks to inspect their interior. It only noted that the tanks contained residue from the prior cargo. Plaintiff alleges that all Defendants were aware that it intended to use the barge to carry diesel and No. 6 oil, which are known as "clean" products. Plaintiff alleges that when it received the vessel, however, its cargo tanks were

1

coated with a thick hardened residue (referred to as "tank bottoms") that made the tanks unsuitable for carrying clean cargo and also decreased the internal capacity of the tanks. Removing the residue required intensive labor at a cost of more than $1 million.

Plaintiff alleges that Sabine was negligent in failing to detect the residue and in misrepresenting the condition of the tanks. It also alleges that LeBeouf was aware of the residue and failed to disclose it to Plaintiff. It further alleges that all of the Defendants were negligent in failing to ventilate the void compartments and cargo tanks to perform a more thorough inspection. Defendant LeBeouf moves for summary judgment on Plaintiff's claims against it for redhibition, breach of warranty of fitness, and fraud in the inducement.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts

---

[1] Fed. R. Civ. P. 56(c) (2012).
[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[3] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532 (5th Cir. 1997).

showing the existence of a genuine issue for trial."[4] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

Defendant LeBeouf alleges that Plaintiff waived the warranties of redhibition and fitness for the intended purpose in the contact of sale of the *Gonsoulin 111*. "[F]or a waiver of redhibition to be effective, the waiver must be: 1.) written in clear and unambiguous terms, 2.) contained in the sale document, and 3.) brought to the attention of the buyer or explained to him."[9] This test likewise applies to the waiver of implied warranties, such as the warranty of fitness.[10]

---

[4] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).
[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).
[6] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[7] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[8] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[9] *Holland v. Breaux*, No. 04-3028, 2005 WL 3542908, at *5 (E.D. La. Nov. 2, 2005).
[10] *See Harvell v. Michelli*, 500 So. 2d 871, 872 (La. App. 1 Cir. 1986).

Plaintiff does not oppose Defendant's waiver arguments, and this Court holds that Defendant has satisfied its burden to prove waiver. First, both the purchase agreement and the bill of sale contain express language waiving implied warranties. Both assert that the sale is "AS IS, WHERE IS" and that the seller makes no warranties of any kind, including warranties of fitness and redhibition. Provisions similar to these have consistently been held to be clear and unambiguous.[11] In addition, it is clear that the buyer, a sophisticated entity represented by counsel, was aware of the waiver in light of its lengthy arms-length negotiation.[12] Accordingly, this Court holds that Plaintiff has waived its warranties of redhibition and fitness for intended use.

The analysis does not stop there, however. Plaintiff alleges that it was fraudulently induced into purchasing the barge and waiving its warranties and that the waivers are therefore ineffective. The Louisiana Supreme Court has stated that:

> [A]n otherwise effective exclusion or limitation of the warranty against redhibitory defects is not effective if the seller commits fraud, as defined in the civil code, upon the buyer. Thus, although the warranty against redhibitory defects may be excluded or limited, a seller cannot contract against his own fraud and relieve himself of liability to fraudulently induced buyers.[13]

Plaintiff alleges that Defendant fraudulently induced it into purchasing the barge by failing to disclose the barge's redhibitory defect—the significant tank bottoms—despite having knowledge of it. In order to prove fraud, Plaintiff must show "(1) a misrepresentation, suppression, or omission of true

---

[11] *See, e.g., Matthis v. Couvillion*, 613 So. 2d 1024, 1025 (La. Ct. App. 1993) (stating that "bill of sale contains the language 'as is, no warranty.'").

[12] *Ross v. Premier Imports*, 704 So. 2d 17, 22 (La. App. 1 Cir. 1997), ("Thus, to be effective, it is not necessary for a waiver to be verbally brought to the attention of a purchaser if the facts demonstrate that the purchaser should have known of the existence of the waiver through presentation of the documents and the language and format of the waiver.").

[13] *Shelton v. Standard/700 Associates*, 798 So. 2d 60, 64 (La. 2001).

information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract."[14]

Plaintiff argues that LeBeouf suppressed and omitted information regarding the true nature of the tank bottoms and the cost to restore the tanks for use in clean service in order to induce Plaintiff into the sale. Specifically, Plaintiff identifies the following instances in which it argues that Defendant intentionally and fraudulently failed to disclose the truth about the condition of the cargo tanks.

1. Although Plaintiff was aware that the *Gonsoulin 111* had been in dirty service prior to the sale, it argues that LeBeouf never explained what it meant by "dirty service." According to Plaintiff, "dirty service" could mean that the barge carried No. 6 oil, which would be relatively easy and inexpensive to clean. It might also mean, however, that the barge carried a denser cargo such as crude or slurry, which would result in a more significant residue build-up in the cargo tanks. Plaintiff argues that LeBeouf never disclosed that "dirty service" meant the latter and that it would cost between $700,000 and $1,300,000 to remediate the tanks for use in clean service.
2. Plaintiff alleges that it discussed its intentions to carry clean cargo with representatives of LeBeouf and requested a list of past cargos, but never received it. LeBeouf also never disclosed the difficulty in converting the barge to clean service during these conversations.
3. Plaintiff asked LeBeouf to perform certain modifications to the pumping station on the barge so that it would be suitable for carrying

---

[14] *Id.*

5

    diesel, a clean product. LeBeouf responded to the modification request with a quote for the work, including $56,000 to clean the tanks "with a hot water wash as required to perform hot work." LeBeouf's quote did not address the feasibility of cleaning the barge to carry diesel, and it expressly refused to certify that the barge would be suitable to carry diesel after cleaning. Plaintiff alleges that it understood Defendant's refusal to certify to mean that, while the quote included cleaning the tanks, Defendant was not in the business of certifying whether certain cargo could be safely carried. Defendant alleges that the quote merely included gas freeing the tanks to perform hot work.

4. Although Plaintiff admits that representatives of LeBeouf suggested to it that the *Gonsoulin 111* would be difficult to convert to clean service, it argues that these statements were ambiguous and did not convey the true cost and difficulty involved in the conversion.

Defendant disputes that these representations amount to fraudulent omissions. Defendant also argues that, regardless of whether it made a fraudulent representation, Plaintiff could have ascertained the truth through due diligence. Specifically it argues that because Plaintiff knew that the barge had been in dirty service, it should have made the necessary inquiries to determine if the barge was appropriate for its desired use. Pursuant to Louisiana Civil Code article 1954, "[f]raud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill."[15] This Court holds that even assuming, without deciding, that Defendant fraudulently induced Plaintiff

---

[15] La. Civ. Code art. 1954.

into purchasing the barge, Plaintiff cannot succeed on its claims because it could have—and should have—ascertained the truth.

In *Newton v. Dongieux*, the plaintiff–buyers argued that the defendants–sellers misrepresented the extent of a flooding issue at the home that they purchased.[16] The Louisiana Fifth Circuit Court of Appeals, however, found that because the defendants had disclosed that the home had a flooding problem, "it was incumbent upon the [plaintiffs], as purchasers, to act as reasonably prudent buyers and to further investigate the flooding issue."[17] It noted that "[a] buyer is under a duty to make an inspection that is reasonable in light of all the circumstances surrounding the sale."[18]

Similarly, Defendants disclosed that the barge was engaged in dirty service. In fact, representatives of LeBeouf openly questioned the wisdom of attempting to use the *Gonsoulin 111* in clean service.[19] Even the Plaintiff's own inspector noted that there were cargo remnants in the tanks. Any of these instances should have prompted Plaintiff to initiate further inspection of the cargo tanks. It was Plaintiff's duty to further investigate the condition of the cargo tanks and whether they were suitable for its desired use. The analysis of *Newton* is even more compelling where, as here, the buyer is a sophisticated entity with knowledge of the maritime shipping industry. "In determining the diligence of the complaining party, '[s]ubjective aspects such as a party's business experience or professional capacity must be taken into account.'"[20]

Further, Plaintiff has not shown that it could not have discovered the tank bottoms without diligence or special skill. Plaintiff argues that it could

---

[16] *Newton v. Dongieux*, 145 So. 3d 478, 4831 (La. App. 5 Cir. 2014).
[17] *Id.*
[18] *Id.*
[19] Doc. 56-6, p. 7.
[20] *Petrohawk Properties, L.P. v. Chesapeake Louisiana, L.P.*, 689 F.3d 380, 390 (5th Cir. 2012).

not have discovered the tank bottoms because they were concealed in the cargo tanks, and the tanks had not been certified for entry, indicating a risk of asphyxiation. Plaintiff does not, however, submit any evidence supporting this contention.

The inspection prepared by Sabine indicated that the void compartments on the barge were unsafe for entry, not the cargo tanks. Based on this information, Plaintiff requested only that the void compartments be ventilated. There is no indication that Plaintiff believed that the cargo tanks were not ventilated. Thereafter, Plaintiff's representative, Stephen Bragoli, did in fact enter a cargo tank but did not perform an inspection because he did not have a flashlight or other equipment. He testified that he believed that Sabine had already inspected the cargo tanks. He did not testify that his failure to complete the inspection was related to safety concerns. Plaintiff attached to its sur-reply, however, a declaration from Mr. Bragoli attesting that he did not enter the cargo tanks because he did not believe they were certified for safe entry. Even so, Defendant has submitted a Marine Chemist Certificate prepared on the day of Mr. Bragoli's inspection certifying that the tanks were safe for entry. Accordingly, there is no reason that Mr. Bragoli's concerns could not have been assuaged and an inspection performed at that time. Plaintiff does not dispute the fact that the tank bottoms would have been readily apparent during an inspection of the cargo tanks. Accordingly, this Court finds that Plaintiff has not created a material issue of fact as to its failure to use due diligence to ascertain the truth. Therefore, Plaintiff cannot succeed on its claim of fraudulent inducement, and its warranties of redhibition and fitness have been waived.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED, and all claims against LeBeouf are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana this 17th day of August, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**